| | |
|---|---|
| TONYA LIGHTNER<br>*Plaintiff*,<br><br>v.<br><br>INLIVIAN., formally known as the CHARLOTTE HOUSING AUTHORITY; AND MONICA NATHAN, IN HER INDIVIDUAL AND OFFICIAL CAPACITY;<br><br>*Defendants.* | **MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION TO COMPEL REQUEST FOR PRODUCTION OF DOCUMENTS**<br><br>**Electronically Filed** |

**NOW COMES**, Plaintiff, hereinafter referred to as ("Mrs. Lightner) by and through her counsel of record, Shayla C. Richberg, respectfully submits this Memorandum in Support of Plaintiff's Motion to Compel.

## NATURE OF THE CASE

On December 8, 2023, Plaintiff filed a Complaint alleging claims against the Defendant for: (1) Retaliatory Discrimination and (2) Violation of the 14th Amendment pursuant to §1983. [DE1]. In response to Plaintiff's Complaint, Defendant filed an Answer on February 9, 2024. [DE14]. On March 11, 2024, Parties period of Discovery was ordered to begin. [DE16]. Currently parties are engaged in the process of discovery and working to discover facts that lead to discoverable information.

## STATEMENT OF THE FACTS

Ms. Lightner began working for Defendants on March 7, 2005, until her termination on or around July 30, 2021. At the time of termination Ms. Lightner served as the Coordinator for Defendant's Homeownership Program making an annual salary of sixty-five thousand dollars ($65,000). Ms. Lightner's main responsibilities included processing applications for residents that desired to receive assistance from the homeownership program. The homeownership program is a function of Defendants non-profit organization CORE which was specifically founded to assist recipients of HUD vouchers with the process of obtaining a mortgage by utilizing their vouchers to help with mortgage payment assistance. On or around October of 2020, Ms. Lightner, was instructed by her

supervisor Defendant Nathan, to disregard several HUD regulations when processing homeownership applications. In efforts to maintain the integrity of the program and to remain in compliance with HUD regulations, Mrs. Lightner informed Defendant Nathan that she would not violate the due process rights of housing applicants as instructed by Defendant Nathan. Shortly after Mrs. Lightner reported the policy and legal violations to Defendant Nathan, Mrs. Lightner began to receive several adverse actions on the job in retaliation for her reports. In addition to Mrs. Lightner being retaliated against, she was also told that if she did not process the applications according to Defendant Nathan's unlawful instructions that she would cancel those applications. Defendant Nathan's instructions to Mrs. Lightner served as her vehicle to help facilitate the discrimination of housing applicants. In addition to reporting due process violations and discrimination infractions to Defendant Nathan, Mrs. Lightner also notified several upper management personnel and Human Resources of her concerns, including but not limited to Sandra Pizarro, the Executive Vice President of Operations and Talent, Tomico Evans, the Executive Vice President of CORE and the supervisor of Defendant Nathan; however, no action was taken by Defendants to address the due process violations and discrimination of applicants or the retaliation experienced by Mrs. Lightner.

During this time, other employees began to complain to management about Defendant Nathan. As a result of the widespread complaints HCI Advisory Group was hired by Inlivian to investigate the employee relations within Inlivian and the CORE department. Additionally, HCI investigated the employee complaints against Defendant Nathan and created temperature surveys. At the conclusion of HCI's investigation, it was determined that termination was recommended. Shortly after receiving the recommendation of termination from HCI Monica Nathan was terminated.

Plaintiff now seeks support from the Court in facilitating the production of documents from HCI Advisory Group in efforts to obtain the certified records, documents, notes, and communications concerning Defendant Nathan's termination and overall human resource issues within Inlivian and the CORE department that were uncovered during HCI's investigation so that Plaintiff can be fully prepared for depositions that begin this August.

## STANDARD OF REVIEW

Pursuant to Federal Rules of Civil Procedure, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportionate to the needs of the case." Fed. R. Civ. P. 26(b)(1). "The purpose of discovery is to provide a mechanism for making relevant information available to the litigants." Taekman v. Unum Life Ins. Co. of Am., 2023 U.S. Dist. LEXIS 129621, *9 (M.D.N.C. 2023). On its own initiative or in response to a motion for protective order under Rule 26(c), a district court may limit [discovery]. Id. "Over the course of more than four decades, district judges and magistrate judges in the Fourth Circuit (including members of this Court) have repeatedly ruled that the party or person resisting discovery, not the party moving to compel discovery, bears the burden of persuasion". Id. "Where a protective order is sought, the moving party bears the burden of establishing good cause. This burden requires more than stereotyped and conclusory statements, but rather the movant must present a particular and specific demonstration of fact as to why a protective order should issue." Id. "A court's customary reluctance to constrain discovery is heightened in the case of a motion seeking to prevent the taking of a deposition." Id.

Moreover, a Court may quash or modify a subpoena that: (i) fails to allow a reasonable time to comply; (ii) requires a person to comply beyond the geographic limits specified in Rule 45(c); (iii) requires disclosure of privileged or other protected matter if no exception or waiver applies; or (iv) subjects a person to undue burden. Fed. R. Civ. P. 45(d)(3)(A). Hall v. Putnam Cnty. Comm'n, 2023 U.S. Dist. LEXIS 114957, *4 (S.D. W. Va. 2023). The burden of persuasion in a motion to quash a subpoena ... is borne by the movant. Id. As an alternative to quashing a subpoena, a court may issue a protective order to protect the subpoena recipient from "annoyance, embarrassment, oppression, or undue burden or expense. Id. Notwithstanding the court's broad authority, protective orders should be sparingly used and cautiously granted. Id. Likewise, a court's customary reluctance to constrain discovery is heightened in the case of a motion seeking to prevent the taking of a deposition. Id.

Additionally, a party does not have standing to move to quash a subpoena served on a third party. Crabill v. Hill, 2023 U.S. Dist. LEXIS 65062, *1 (S.D. W. Va. April 13, 2023). Rather, only the person or entity to whom a subpoena is directed has standing to file a motion to quash. Id.

# ARGUMENT

## I. PLAINTIFF HAS GOOD REASONS FOR SEEKING DOCUMENT PRODUCTION DIRECTLY FROM HCI ADVISORY GROUP.

In the normal course of business HCI Advisory Group investigated and maintained the records connected to the investigation of employee complaints against Defendant Nathan and Inlivian's CORE department. (Exhibit 8). Therefore, in efforts to obtain the most accurate and certified records concerning the central issues of Plaintiff's case in chief, Plaintiff's counsel chose to obtain these important records directly from the original source so that the custodian of records for HCI Advisory Group could execute the affidavit that was attached to the subpoena served on HCI Advisory Group. (Exhibit 3). By obtaining the certified records Plaintiff is better able to ensure the accuracy of information being offered to the Court as evidence. Therefore, HCI Advisory Groups reason for not producing documents because they want Plaintiff to get the documents from Defendants is without merit and not a decision that lies with a third-party custodian of records.

## II. PLAINTIFF'S REQUESTS ARE REASONABLE AND PROPORTIONATE TO THE NEEDS OF PLAINTIFF'S CASE IN CHIEF.

Prior to serving the initial subpoena on HCI Advisory group, Plaintiff's counsel called HCI Advisory Group and spoke to the Company's President who serves as their custodian of records and was informed of the general scope of services provided by HCI Advisory Group. (Exhibit 8). Through the use of Progress Assessments, processing mapping, and compliance strategies, HCI Advisory Group partners with Housing Authority agencies to improve their operations and overall workplace relations. In efforts to seek information specific to employee relations during the time of the incidents as alleged in Mrs. Lightner's complaint, Plaintiff specified the time period and subject matter of the requests. HCI Advisory Group was hired to perform very specific tasks for Defendants for a very specific reason, therefore it would not be burdensome for them to identify and produce

documents directly related to Mrs. Lightner's requests. Plaintiff has several depositions scheduled starting August and is in need of the documents requested from HCI Advisory Group to have more fruitful depositions.

## CONCLUSION

For the reasons stated above, Plaintiff respectfully requests that the Court Grant Plaintiff's Motion to Compel and tax Plaintiff's costs in bringing this motion to HCI Advisory Group.

Respectfully submitted this the 27th day of July 2024.

**RICHBERG LAW, PLLC**

\_/s/ Shayla C. Richberg_____
Richberg Law, PLLC
Shayla C. Richberg
3326 Durham-Chapel Hill Blvd B- 120A
Durham, NC 27707
Phone: 919.403.2444
Fax: 919.869.1440
Email: DefendMe@RichbergLaw.com
Attorney for the Plaintiff

## CERTIFICATE OF COMPLIANCE

      This memorandum complies with the page limit provided in L.R. 7.1 (d) and does not exceed 25 pages and contains 7 pages.

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of this document has been served upon Defendant and Defendant's Counsel, by using the CM/ECF electronic filing system, at the contact information below:

**WILLIAMS MULLEN**

Edward S. Schenk III
N.C. Bar No.:32917
Williams Mullen
301 Fayetteville Street, Suite 1700
PO BOX 1000
Raleigh, NC 27602
Tel: (919) 981-4000
Facsimile: (919) 981-4300
Email: eschenk@williamsmullen.com

Michael C. Lord
N.C. Bar No: 15966
301 Fayetteville Street, Suite 1700 (27601)
PO Box 1000
Raleigh, NC 27602
Telephone: (919) 981-4000
Facsimile: (919) 981-4300
Email: mlord@williamsmullen.com
*Attorneys for Defendants*

This the 27th day of July 2024.

                                              **RICHBERG LAW, PLLC**

                                              /s/ Shayla C. Richberg
                                              Shayla C. Richberg, NC Bar No. 44743
                                              Attorney For Plaintiff
                                              3326 Durham-Chapel Hill Blvd B- 120A
                                              Durham, NC 27707
                                              Phone: 919.403.2444
                                              Fax: 919.869.1440
                                              Email: DefendMe@RichbergLaw.com