UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
Civil Action No. 3:23-CV-846-MOC-SCR

TONYA LIGHTNER
    *Plaintiff*,

v.

INLIVIAN., f/n/a HOUSING AUTHORITY
OF THE CITY OF CHARLOTTE, N.C.;
C.O.R.E. PROGRAMS, INC.
AND MONICA NATHAN, In Her
Individual AND Official Capacity;

    *Defendants.*

**AMENDED COMPLAINT
(JURY TRIAL DEMANDED)**

**Electronically Filed**

---

**NOW COMES**, Plaintiff, **TONYA LIGHTNER**, hereinafter referred to as ("Mrs. Lightner"), by and through her counsel of record, Shayla C. Richberg, and hereby moves this Honorable Court, for damages against Defendants alleging: (1) Retaliatory Discrimination, pursuant to, 42 U.S.C. § 1983, *et seq.* as amended; (2) Denial of The Equal Protection of the Laws Under the Fourteenth Amendment to the United States Constitution, pursuant to, 42 U.S.C. § 1983, *et seq.* as amended; (3) Constructive Discharge, pursuant to, 42 U.S.C. § 1983, *et seq.* as amended; (4) Hostile Work Environment, pursuant to, 42 U.S.C. § 1983, *et seq.* as amended, and (5) Negligent Supervision and Retention.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

1.     Ms. Lightner has exhausted all required administrative remedies.

2.     Ms. Lightner provided Defendants with notice of claims prior to the filing of this action.

## PARTIES

3. Ms. Lightner is a current citizen and resident of Fort Bend County, Missouri County, Texas.

4. At all relevant times hereto, Ms. Lightner was a resident and citizen of Mecklenburg County, Charlotte, North Carolina.

5. Defendant Inlivian is, and at all relevant times hereto, a North Carolina Municipal Corporation duly organized and existing under the laws of the State of North Carolina with its registered office and agent located in Mecklenburg County, Charlotte, North Carolina.

6. Upon information and belief, Defendant Inlivian has waived governmental immunity and all other forms of immunity against itself and its employees that may otherwise have been applicable in this action by purchasing liability insurance, participation in a risk pool, settling similar claims, and/or as otherwise provided by law.

7. Defendant C.O.R.E. Programs, Inc. ("C.O.R.E.") is, and at all relevant times hereto, a North Carolina Non-Profit Corporation duly organized and existing under the laws of the State of North Carolina with its registered office and agent located in Mecklenburg County, Charlotte, North Carolina.

8. Upon information and belief, Defendant C.O.R.E. has waived governmental immunity and all other forms of immunity, if any, against itself and its employees that may otherwise have been applicable in this action by purchasing liability insurance, participation in a risk pool, settling similar claims, and/or as otherwise provided by law. Additionally, C.O.R.E. has waived all immunities, if any, because it is private and proprietary entity of Inlivian.

9. At all times relevant hereto, Defendant Monica Nathan, (hereinafter Nathan) was employed by Defendant Inlivian as the Vice President of Operations of C.O.R.E.

10. Upon information and belief, Defendant Nathan is a citizen and resident of Mecklenburg County, North Carolina.

11. At all times relevant hereto, all Defendants were state actors acting under the color of State Law.

## **JURISDICTION AND VENUE**

12. That the primary acts occurred in Mecklenburg County, Charlotte, North Carolina.

13. At all material times herein, Ms. Lightner was employed by Defendant Inlivian and required to perform duties for Defendant C.O.R.E.

14. Upon information and belief, at all material times herein, Defendants have had annual gross receipts exceeding $500,000 and has employed one or more employees engaged in commerce in the State of North Carolina.

15. At all times material hereto, Defendants had more than 500 employees in each of the 20 or more calendar weeks in the current or preceding calendar year.

16. That this Court has Subject Matter Jurisdiction over this case pursuant to 28 U.S.C. § 1331, which gives district court's jurisdiction over all civil actions arising under the Constitution laws, and treaties of the United States.

17. This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1343, which gives district courts original jurisdiction over (a) any civil actions authorized by law to be brought by any person to redress the deprivation under color of State Law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or for all persons within the jurisdiction of the United States; and (b) any civil action to recover

damages or to secure equitable relief under any Act of Congress providing for the protection of the civil rights.

18. This is also an action to redress the deprivation of Plaintiff's constitutional rights under the Fourteenth Amendment of the United States Constitution pursuant to 42 U.S.C. §1983.

19. That this court has Personal Jurisdiction over Defendants, as Defendants reside in the State of North Carolina and all material events giving rise to this cause of action occurred in Mecklenburg County, North Carolina.

20. That all material events giving rise to this cause of action occurred in Mecklenburg County, North Carolina. All Defendants exist and/or reside in Mecklenburg County, North Carolina. Under 28 U.S.C. § 1391 (b), venue is proper in the United States District Court for the Western District of North Carolina.

## STATEMENT OF THE FACTS

21. Ms. Lightner is a black woman over the age of forty ("40") and was employed with Defendants since March 7, 2005, until her termination on or around July 30, 2021.

22. Ms. Lightner was the Coordinator for Defendants' Homeownership Program making an annual salary of sixty-five thousand dollars ($65,000).

23. Under the direction of C.O.R.E, Ms. Lightner's main responsibilities included processing applications for residents that desired to receive assistance from the homeownership program.

24. That the homeownership program is a federally funded program administered by the State of North Carolina, City of Charlotte to assist residents that are historically ineligible to receive a home loan due to having a lower credit score and/or experiencing financial challenges, which disproportionately impacts minority and elderly residents.

25. On December 16, 2019, Mrs. Lightner was promoted and became the new Homeownership Program Coordinator with C.O.R.E.

26. Mrs. Lightner's supervisor was Defendant Monica Nathan.

27. On December 18, 2019, Mrs. Lightner received a performance rating of Successfully meets expectations.

28. On or around April of 2020, Mrs. Lightner noticed and was instructed not to clock in and stamp homeownership applications with the date and time the application was received, in violation of HUD regulations.

29. On or around April of 2020, Mrs. Lightner was instructed not to maintain a central waitlist, in violation of HUD regulations and Defendant Inlivian's Move to Work Plan.

30. On or around April of 2020, Mrs. Lightner observed that homeownership applications were not stored in a secure location, in violation of HUD and program regulations.

31. On or around April of 2020, Mrs. Lightner was instructed not to process Homeownership Applications in HUD's YARDI system, which prevented HUD from viewing homeownership applications in the order in which they were received, in violation of HUD and program regulations.

32. On or around April of 2020, Mrs. Lightner observed Defendant Nathan admitting residents into DreamKey Partners' Classes, even though they did not complete the required homeownership application, which allowed them to skip ahead of residents that did apply and were waiting to be admitted into DreamKey Partners' classes so that they could be mortgage ready, in violation of HUD and program regulations.

33. On or around April of 2020, Mrs. Lightner was instructed to only accept mortgage preapproval letters from residents if they chose to work with Nathan's prepared lenders and realtors, in violation of HUD and program regulations.

34. On or around April of 2020, Mrs. Lightner observed Defendant Nathan rejecting lenders and realtors from working with the Homeownership Program, even though they completed their required symposium courses, if they were not one of her preferred lenders and realtors, in violation of HUD and program regulations.

35. On or around April of 2020, Mrs. Lighter observed Shonte Hoover, Inlivian's Housing Choice Voucher Manager, being prevented from properly selecting residents for the Homeownership Program based on the chronological order that applications were received, because Defendant Nathan hand-picked homeownership classes based on her individual criteria, which disproportionately impacted senior applicants, disabled applicants, and applicants with lower credit scores.

36. On or around May of 2020, Mrs. Lightner was informed by Shonte Hoover, that she was not following proper procedures in processing homeownership applications and that she needed to follow HUD and program regulations.

37. Mrs. Lightner reported to Defendant Nathan that she was advised that Defendant Nathan was requiring her to process applications contrary to HUD and program regulations.

38. Defendant Nathan instructed Mrs. Lightner to continue doing things the way she asked her to and not to listen to Shonte Hoover.

39. On or around October of 2020, Mrs. Lightner, continued to receive instructions from Defendant Nathan, to discriminate against applicants by not processing certain eligible

homeownership applications, in violation of HUD and program regulations and the instructions of Shonte Hoover.

40. Mrs. Lightner was instructed not to review or submit applications from applicants that were considered elderly and to send purge letters instead, in violation of HUD and program regulations.

41. Additionally, Mrs. Lightner was instructed not to submit applications from applicants that had low credit scores, even though participation in the department's credit repair workshops were a part of the homeownership program, in violation of HUD and program regulations.

42. Mrs. Lightner was instead instructed to prioritize the applications of residents that agreed to work with Defendant Nathan's preferred lenders and realtors over other qualified applicants and was not allowed to create a waitlist for applicants, in violation of HUD and program regulations.

43. If Mrs. Lightner failed to prioritize applications per the instructions of Defendant Nathan, she was threatened and harassed and told that the applications selected against Defendant Nathan's instructions would be deleted.

44. While Defendant Nathan instructed Mrs. Lighter to continue following her instructions, she was told by Shonte Hoover that regulations were not being followed and to stop processing applications as Nathan instructed her too and Hoover threatened to shut down the Homeownership program.

45. Defendant Nathan's instructions were in violation of the North Carolina and Federal Fair Housing Act.

46. Defendant Nathan's instructions created disparate treatment to minority applicants that were members of protected classes.

47. Mrs. Lightner complained directly to Defendant Nathan on several occasions that she felt that Defendant Nathan's instructions to her amounted to race discrimination, age discrimination, and violations of the Fair Housing Act and HUD. Defendant Nathan told Mrs. Lightner to just do as she said.

48. On or around December 15, 2020, Defendant Nathan gave Mrs. Lightner a rating of Successfully Exceeds Expectations during her annual review.

49. After Mrs. Lighter's last review in December of 2020, she complained to Sandra Pizarro, in human resources, about the conflicting instructions that she was receiving from Nathan and Hoover and that she believed Monica Nathan was violating HUD, FHA, and program regulations.

50. In response to Mrs. Lightner's complaint, Sandra Pizarro assured Mrs. Lightner that she would speak to Defendant Nathan.

51. After Mrs. Lightner complained Defendant Nathan began to not show up for Mrs. Lightner's monthly meetings, refused to assist Mrs. Lightner in her job duties, and prevented Mrs. Lightner from completing certain work tasks.

52. On or around February of 2021, Mrs. Lightner again complained to Sandra Pizarro about Defendant Nathan committing violations and her retaliatory behavior towards Mrs. Lightner.

53. Sandra Pizarro again informed Mrs. Lightner that she would speak to Defendant Nathan, however she refused to open a formal complaint and investigation into the situation.

54. Shortly after Mrs. Lightner's second complaint to Human Resources, Defendant Nathan on May 12, 2021, gave Mrs. Lightner an informal warming outlining several alleged deficiencies in Mrs. Lightner's work performance.

55. Mrs. Lightner was informed that if her performance did not improve, she would be met with more formal disciplinary action.

56. That Ms. Lightner notified Sandra Pizarro, the Executive Vice President of Operations and Talent that Defendant Nathan was creating a hostile work environment and wrote her up for violations that she did not commit. Pizarro instructed Mrs. Lightner on how to refute the allegations. Additionally, Pizarro instructed Mrs. Lightner to seek guidance from Tomico Evans, who was Defendant Nathan's supervisor, on how to address her concerns with Defendant Nathan's discriminatory instructions and conduct.

57. On or around May of 2021, Mrs. Lightner notified Tomico Evans, the Executive Vice President of CORE and the supervisor of Defendant Nathan that Defendant Nathan was discriminating against applicants and violating Fair Housing Policies creating a Hostile Work Environment for the C.O.R.E. department. However, Evans informed Mrs. Lightner that she refused to believe Mrs. Lightner and would continue to stand behind Defendant Nathan without doing an investigation.

58. Defendants continued pattern of retaliation against Mrs. Lightner for engaging in her protected right to complain of discrimination and to be free of discrimination in the workplace created a hostile work environment for Mrs. Lightner.

59. Mrs. Lightner was diagnosed with anxiety and suffered from several panic attacks.

60. Mrs. Lightner's exposure to a hostile work environment and retaliation forced her to resign and was therefore Constructively Discharged by Defendants.

61. Mrs. Lightner feels that Defendants Constructively Discharged her because if she continued to work for Defendants, she would not be able to perform her job duties without violating the law and program regulations.

**COUNT ONE**
**RETALITORY DISCRIMINATION; 42 U.S.C. 1983**
**AS TO DEFENDANTS INLIVIAN, C.O.R.E., AND NATHAN INDIVIDUALLY**

**I. Mrs. Lightner experienced a pattern of adverse employment actions after she engaged in her protected right to complain of discrimination against residents and Defendants' violations of HUD and Fair Housing Act Policies and Procedures.**

62. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 61 and incorporates the same by reference herein as if again fully set forth.

63. Defendants were acting under color of state law.

64. Defendants played a role in the injury sustained by Mrs. Lightner.

65. The First Amendment of the United States Constitution gave Mrs. Lightner the right to free speech to notify Defendants of matters of public importance.

66. N.C. Gen. Stat. §126-84-85 gave Mrs. Lightner the right to free speech to report to Defendants' activity that constituted a violation of State or federal law, rules or regulations.

67. Mrs. Lightner's complaints of program violations and discrimination against residents were matters of public importance thus her reports of violations amounted to protected activity.

68. 42 U.S.C. §3617 makes it unlawful to retaliate, coerce, intimidate, threaten, or interfere with a person's right to protect and provide Fair Housing benefits to qualified recipients.

69. Mrs. Lightner's refusal to continue violating Fair Housing, HUD, and program regulations amounted to protected activity as described in 42 U.S.C. § 3617.

70. Defendants took adverse employment action against Mrs. Lightner, by preventing her from completing work tasks, and writing her up for refusing to discriminate against applicants

based on race, age, disability, financial status, and other various discriminatory factors, in violation of federal and state housing authority law.

71. Defendants took adverse employment action against Mrs. Lightner, by refusing to assist her with work tasks and refusing to supervise her.

72. Defendants took adverse employment action against Mrs. Lightner, by interfering with her right to assist residents to receive housing benefits that they qualified for, in violation of 42 U.S.C. § 3617.

73. Defendants' motivation to retaliate against Mrs. Lightner was rooted in Defendant Nathan's desire to redefine the population of the people who were being served, which disproportionately impacted black residents, residents with lower credit scores, elderly residents, and disabled residents.

74. A causal connection may be inferred due to the time frame between her engagement of protected activity and adverse employment actions, including but not limited to her informal warning.

75. At the time of her constructive termination Mrs. Lightner was exceeding the expectations of Defendants.

76. Defendants' constructive termination of Mrs. Lightner was an intentional act of retaliatory discrimination.

77. Mrs. Lightner has been directly and proximately damaged by Defendants' wrongful conduct, including emotional pain and suffering, mental anguish, loss of income, moving relocation expenses, and injury to reputation.

78. Defendant Nathan in her individual capacity engaged in retaliatory discriminatory conduct with malice and reckless indifference to the protected rights of Mrs. Lightner, thus liable for punitive damages.

79. As a direct and proximate result of said retaliation, Mrs. Lightner has been damaged and suffered physical and emotional injuries and is entitled to compensatory damages and punitive damages in an amount in excess of $25,000.00.

## COUNT TWO
## DEPRIVATION OF EQUAL PROTECTION; 42 U.S.C. §1983
## AS TO DEFENDANTS INLIVIAN, C.O.R.E., AND DEFENDANT NATHAN INDIVIDUALLY

**IV. Defendants' violated Mrs. Lightner's right to be free of discrimination by not providing her with Equal Protections codified in program regulations, laws, and the United States Constitution.**

80. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 79 and incorporates the same by reference herein as if again fully set forth.

81. Defendants' motivation to retaliate against Mrs. Lightner was rooted in Defendant Nathan's desire to redefine the population of the people who were being served, which disproportionately impacted black residents, residents with lower credit scores, elderly residents, and disabled residents.

82. Ms. Lightner's complaints of discrimination against residents and abuse of authority motivated Defendants to retaliate against Ms. Lightner and create a hostile work environment that forced Ms. Lightner to be constructively terminated.

83. Defendants' discriminatory actions interfered with Mrs. Lightner's ability to perform her job.

84. Defendants' instructions to Ms. Lightner to engage in intentional violation of policy, state, and federal law, were motivated by Defendants' custom, policy, and practice to not follow
12

their own regulations.

85. Mrs. Lightner had the right to be free of discrimination.

86. Mrs. Lightner engaged in protected activity when she exercised her legal right and duty to report that Defendant Nathan violated state and federal law and Defendants' policies and procedures, pursuant to N.C. Gen. Stat. §126-84-85.

87. That Defendants' actions caused Mrs. Lightner to feel targeted, intimidated, and fearful to perform the essential functions of her job, which included, keeping the homeownership program up to date and in compliance with the Fair Housing Act, Equal Credit Act, and other relevant laws, in violation of 42 U.S.C. § 3617.

88. Employees that did not complain of discrimination and Defendant Nathan's abuse of discretion did not experience the same adverse treatment as Mrs. Lightner.

89. Defendants have a pattern of violating their own internal polices and HUD and FHA regulations.

90. Defendants were all state actors acting under the color of State Law.

91. Defendants subjected Ms. Lightner to violations of her rights to Equal Protection by: (a) failing to adequately investigate reports of discrimination and violations of state and federal law; (b) failing to address Defendant Nathan's behavior; (c) failing to adequately supervise and monitor Defendant Nathan; and (d) manifesting deliberate indifference towards discrimination of applicants and violations of regulations.

92. Defendant Inlivian and Defendant C.O.R.E. authorized the unconstitutional practices and customs of Defendant Nathan, by failing train, supervise, and correct Defendant Nathan's actions.

93. Defendants were on notice that policies and regulations were not being followed creating disparate treatment amongst residents, which disproportionately affected senior applicants, black applicants, applicants with disabilities, and applicants with lower credit scores.

94. That Judicial Notice can be taken to discover all matters of public records and information that Rule 201 of the Federal Rules of Civil Procedure constitute facts to adjudicate said claim.

95. That Defendants, at all relevant times, was a policymaker for the purpose of implementing Inlivian and C.O.R.E.'s unconstitutional policies or customs.

96. Defendant Inlivian and Defendant C.O.R.E. and/or practices and tacit authorization of Defendant Nathan's discriminatory practices constituted disparate treatment of housing applicants and Mrs. Lightner.

97. As a direct and proximate result of Defendants unconstitutional policies and/or practices that promoted deliberate indifference Mrs. Lightner suffered severe physical and emotional injuries and is entitled to compensatory damages in an amount in excess of $25,000.00.

<u>**COUNT THREE**</u>
<u>**CONSTRUCTIVE DISCHARGE; 42 U.S.C. §1983**</u>
<u>**AS TO DEFENDANTS INLIVIAN, C.O.R.E., AND DEFENDANT NATHAN**</u>
<u>**INDIVIDUALLY**</u>

98. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 97 and incorporates the same by reference herein as if again fully set forth.

99. Defendants were all state actors acting under the color of State Law.

100. That Defendants' actions caused Mrs. Lightner to feel targeted, intimidated, and fearful to perform the essential functions of her job, which included, keeping the homeownership program up to date and in compliance with the Fair Housing Act, Equal Credit Act, and other relevant laws, in violation of 42 U.S.C. § 3617.

101. That Defendants' actions caused Mrs. Lightner to feel targeted, intimidated, and fearful to perform the essential functions of her job, which included, managing all aspects of homeownership selection in compliance with the Fair Housing Act, Equal Credit Act, and other relevant laws, in violation of 42 U.S.C. § 3617.

102. That Defendants' actions caused Mrs. Lightner to feel targeted, intimidated, and fearful to perform the essential functions of her job, which included, recruiting, training, and maintaining a viable listing of preferred lenders and relators that did not have to be selected by or affiliated with Defendant Nathan.

103. That Defendants' actions caused Mrs. Lightner to feel targeted, intimidated, and fearful to perform the essential functions of her job, which included maintaining a central based waitlist of applicants.

104. That Defendants' actions caused Mrs. Lightner to feel targeted, intimidated, and fearful to perform the essential functions of her job, which included, clocking in and stamping applications with the date and time applications were received and then uploading applications into HUD's YARDI system.

105. That Defendants' actions caused Mrs. Lightner to feel targeted, intimidated, and fearful to perform the essential functions of her job, which included, helping applicants become mortgage ready by utilizing resources provided by DreamKey Partners to repair applicants credit scores and other various services provided.

106. Despite Mrs. Lightner's reports to Human Resources and upper management, Defendants stood by idle and refused to investigate and assist Mrs. Lightner, forcing Mrs. Lightner to resign.

107. That a reasonable person in Mrs. Lightner's position would have resigned.

108. Defendant Nathan in her individual capacity engaged in retaliatory discriminatory conduct with malice and reckless indifference to the protected rights of Mrs. Lightner, thus liable for punitive damages.

109. That as a direct and proximate result of said retaliation, Mrs. Lightner has been damaged and suffered severe physical and emotional injuries and is entitled to compensatory damages and punitive damages in an amount in excess of $25,000.00.

**COUNT FOUR**
**HOSTILE WORK ENVIRONMENT; 42 U.S.C. §1983**
**AS TO DEFENDANTS INLIVIAN, C.O.R.E., AND DEFENDANT NATHAN INDIVIDUALLY**

110. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 109 and incorporates the same by reference herein as if again fully set forth.

111. Defendants were all state actors acting under the color of State Law.

112. Defendants custom and practice of Discriminating against applicants and not following their own policies and procedures altered the conditions of Mrs. Lightner's work environment and the duties of her job.

113. Mrs. Lightner experienced serve distress and mental anguish trying to meet the demands of Defendant Nathan while still following the instructions of the HCV manager who was in charge of approving homeownership applications.

114. Despite Mrs. Lightner's complaints to Defendant Nathan she continued to coerce and intimidate Mrs. Lighter into silence.

115. Despite Mrs. Lighter's complaints to Human Resources and upper management, Defendants reused to do an investigation and would not open a formal complaint per Mrs. Lightner's requests.

116. Defendants' violations disproportionately impacted black applicants, elderly applicants,

disabled applicants, and applicants with lower credit scores.

117. Defendant Nathan in her individual capacity engaged in discriminatory conduct with malice and reckless indifference to the protected rights of Mrs. Lightner, thus liable for punitive damages.

118. That as a direct and proximate result of said intimidation and exposure to a hostile work environment, Mrs. Lightner has been damaged and suffered severe physical and emotional injuries and is entitled to compensatory damages and punitive damages in an amount in excess of $25,000.00.

## COUNT FIVE
## NEGLIGENT SUPERVISION AND RETENTION
## AS TO DEFENDANTS INLIVIAN AND DEFENDANT C.O.R.E.

119. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 118 and incorporates the same by reference herein as if again fully set forth.

120. Defendants were all state actors acting under the color of State Law.

121. That this court has supplemental jurisdiction over all state claims pursuant to 28 U.S.C. § 1367.

122. Defendants negligently engaged in conduct, as previously described.

123. Defendants were notified that Defendant Nathan was failing to process homeownership applications pursuant to HUD and program regulations and that Defendant Nathan was violating Fair Housing policies by discriminating against applicants based on their status, race, age, and disabilities.

124. Defendant's failure to correct the actions of Defendant Nathan increased the risk of harm to Mrs. Lightner and recipients of government benefits.

125. As a result of Defendant's gross negligence in not responding to Mrs. Lightner's complaints she suffered emotional distress and was denied equal opportunities to perform

17

the essential functions of her job.

126. That Defendants continued to employ and appoint Defendant Nathan without checking into potential violations that presented a public danger to protected classes receiving government assistance.

127. That Defendants' lack of response to Defendant Nathan's pattern of failing to properly manage the homeownership department served as express authorization of Defendant Nathan's actions.

128. As a result of Defendant's failure to train Defendant Nathan and agents, applicants were discriminated against and unable to receive government benefits that they qualified for.

129. That Defendant's extreme and outrageous conduct has caused Mrs. Lightner to endure the loss of her job, damage to her reputation, emotional injury, and continued unemployment.

130. As a direct and proximate result of the Negligent Supervision and Retention of Defendant Nathan, Plaintiff has been damaged and is entitled to compensatory damages in an amount in excess of $25,000.00.

**WHEREFORE**, Plaintiff prays that:

1. She recovers damages, wages, benefits, and other compensation to which she is entitled, from defendants incurred and to be incurred in an amount in excess of $25,000.00;
2. That she recovers from Defendants compensatory and punitive damages in an amount to be determined at trial;
3. That Plaintiff's judgment bears such interest as is provided by law;
4. That Plaintiff's employment with Defendants be reinstated;
5. That Plaintiff is able to recover back pay from the Defendants;

6. That the costs of this action be taxed against Defendants and that Plaintiff recover her extensive relocation fees, attorney's fees and expenses and costs of litigation pursuant to 42 U.S.C § 1988;

7. That Defendants be ordered to submit to an audit of all housing applications for the past six years to verify that fair housing policies have been complied with.

8. And that all issues of fact be tried by jury, and that Plaintiff have such other and further relief as the court may deem just and proper.

Respectfully submitted this the 20th day of September 2024.

**RICHBERG LAW, PLLC**

_/s/_ Shayla C. Richberg
Shayla C. Richberg, NC Bar No. 44743
Attorney for the Plaintiff
3326 Durham-Chapel Hill Blvd B- 120A
Durham, NC 27707
Phone: 919.403.2444
Fax: 919.869.1440
Email: DefendMe@RichbergLaw.com

# CERTIFICATE OF SERVICE

   I hereby certify that a copy of the foregoing was electronically filed with the Clerk of Court using CM/ECF, which will send notification of such filing to the following. And that additional parties will be served via U.S. Mail.

C.O.R.E Programs, Inc.
c/o Harriet Huell
Registered Agent
400 East Boulevard
Charlotte, NC 28203-4209

Edward S. Schenk III
N.C. Bar No.:32917
Williams Mullen
301 Fayetteville Street, Suite 1700
PO BOX 1000
Raleigh, NC 27602
Tel: (919) 981-4000
Facsimile: (919) 981-4300
Email: eschenk@williamsmullen.com

Michael C. Lord
N.C. Bar No: 15966
301 Fayetteville Street, Suite 1700 (27601)
PO Box 1000
Raleigh, NC 27602
Telephone: (919) 981-4000
Facsimile: (919) 981-4300
Email: mlord@williamsmullen.com
*Attorneys for Defendants*

            **RICHBERG LAW, PLLC**

            /s/ Shayla C. Richberg
            Shayla C. Richberg
            NC Bar No. 44743
            Attorney For Plaintiff
            3326 Durham-Chapel Hill Blvd B- 120A
            Durham, NC 27707
            Phone: 919.403.2444
            Fax: 919.869.1440
            Email: DefendMe@RichbergLaw.com