UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
Civil Action No. 3:23-CV-846-MOC-SCR

| | |
|---|---|
| TONYA LIGHTNER<br>*Plaintiff*,<br><br>v.<br><br>INLIVIAN., f/n/a HOUSING AUTHORITY OF THE CITY OF CHARLOTTE, N.C.; C.O.R.E. PROGRAMS, INC. AND MONICA NATHAN, In Her Individual AND Official Capacity;<br>*Defendants*. | **OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**<br><br><br>**Electronically Filed** |

**NOW COMES**, Plaintiff, **TONYA LIGHTNER**, hereinafter referred to as ("Mrs. Lightner"), by and through her counsel of record, Shayla C. Richberg, pursuant to Local Civil Rules 7.1(e), and respectfully submits this opposition to Defendants' Memorandum in Opposition to Defendants' Motion to Dismiss Amended Complaint.

## **STANDARD OF REVIEW**

The standard for a Motion to Dismiss is straightforward: "A court must take all facts in the complaint as true (and make all reasonable inferences in favor of the plaintiff) and determine whether the complaint states a plausible claim for relief." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Summers v. Altarum Inst., Corp., 740 F.3d 325, 328 (4th Cir. 2014). "Courts need not determine that a plaintiff's victory is probable—only that the facts pled would, if true, entitle the plaintiff to relief." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007).

A "complaint, should not be dismissed summarily unless "it appears 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief,'" quoting

from Conley v. Gibson, 355 U.S. 41, 45-46, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957). Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir. S.C. March 6, 1978). The dates that a plaintiff identifies for acts of discrimination in an EEOC charging document do not strictly limit the scope of a subsequent federal action. The court construes a *pro se* complainant's administrative charge liberally and may consider all alleged acts reasonably related to his claims. Vega v. Wake Cnty. Gov't, 2015 U.S. Dist. LEXIS 39452, *11 (E.D.N.C. March 27, 2015).

Fed. R. Civ. P. 8(a)(2) requires only a short and plain statement of a claim showing that the pleader is entitled to relief, in order to give a defendant fair notice of what the claim is and the grounds upon which it rests. Id. When a complaint states a claim, it may not be dismissed based on a district court's assessment that the plaintiff will fail to find evidentiary support for his allegations or prove his claim to the satisfaction of the factfinder. Id.

"Where the circumstances surrounding an adverse employment action can give rise to (an) inference of discrimination on multiple grounds, the ultimate requirement that age be the "but for" cause to recover on a discrimination claim does not foreclose a plaintiff from pleading in the alternative." Fagan v. U.S. Carpet Installation, Inc., 770 F. Supp. 2d 490, 491 (E.D.N.Y. 2011). As set forth in Federal Rule of Civil Procedure 8(d)(2), "a party pleading in the alternative does not have to separately identify the statements as alternative theories in separate counts or factual allegations." Id. "Rather, Rule 8(d)(2) states that [i]f a party makes alternative statements, the pleading is sufficient if any one of them is sufficient." Id. (See also Fed. R. Civ. P. 8(d)(2). Accordingly, "pursuant to Federal Rule of Civil Procedure 8(d)(3), [a] party may state as many separate claims or defenses as it has, regardless of consistency." Id. (See also Fed. R. Civ. P. 8(d)(3)). Thus, "[t]he flexibility afforded by Rule 8([d]) (2) is especially appropriate in civil rights

2

cases, in which complex inquiries into the parties' intent may sometimes justify raising multiple, inconsistent claims." Id.

## ARGUMENTS

I. **PLAINTIFF HAS STATED A CLAIM FOR RETALIATION PURSUANT TO U.S.C. §1983.**

Defendants' assertions that South Middlesex Opportunity Council, Inc. v. Town of Framingham, holds that Plaintiff cannot seek relief under 42 U.S.C. §1983, is a mischaracterization of the facts in this case. 2008 U.S. Dist. LEXIS 85764, *1. The court in this case held that while "the Fair Housing Act (FHA), 42 U.S.C.S. § 3601 et seq., itself sets forth a comprehensive enforcement mechanism through which private persons can seek relief for violations of 42 U.S.C.S. §§ 3604 and 3617 of the FHA, that a Plaintiff may also seek … complementary relief through 42 U.S.C.S. § 1983. Id. Thus, a Plaintiff may choose to seek relief for their claims directly through FHA enforcement or by filing an action directly with the Courts pursuant to 42 U.S.C. §1983, like Mrs. Lightner has chosen to do in this case.

The plaintiff has unequivocally established that the basis for her Section 1983 claim is the violation of Mrs. Lightner's constitutional right to free speech under the First Amendment. Defendant's assertion that Plaintiff fails to meet the requirements of a Section 1983 claim is fundamentally flawed and reflects a clear misunderstanding of Plaintiff's argument. "To prevail on a § 1983 claim Plaintiffs must demonstrate that: (1) the defendants deprived them of a constitutional right; and (2) the defendants did so "under the color of [Law]." Peltier v. Charter Day Sch., Inc., 37 F.4th 104, 11 (4th Cir. 2022), 2022 U.S. App. LEXIS 16352, *115. The First Amendment of the United States Constitution grants citizens the right to free speech, particularly to notify Defendants of matters of public importance. Donahue v. Windsor Locks Bd. of Fire

3

Comm'rs, 834 F.2d 54, 11 (2d Cir. 1987), 1987 U.S. App. LEXIS 15598, *58, *45* Empl. Prac. Dec. (CCH) ¶37,604.

Plaintiff respectfully asserts that Defendant's mischaracterizations are unfounded. Plaintiff has not merely alleged a violation of federal law but has clearly identified the infringement of a fundamental Constitutional right—her First Amendment rights. After being instructed to violate multiple provisions of the Fair Housing Act (FHA) and HUD regulations, Mrs. Lightner promptly informed Defendants of her belief that Defendant Nathan was acting in violation of HUD, FHA, and program regulations. Following her exercise of First Amendment rights, Mrs. Lightner was subjected to adverse employment actions by Defendant Nathan, including obstruction of her work duties, refusal to provide necessary assistance, issuance of an informal warning regarding alleged performance deficiencies, and threats of disciplinary action. Contrary to Defendants' assertions, while "an employee must show some harm . . . to prevail in a Title VII suit, she need not show that the injury satisfies a significance test." Muldrow v. City of St. Louis, 601 U.S. 346, 346. Moreover, At the time of these actions, Defendant Nathan, acting as Mrs. Lightner's supervisor and as an employee of Inlivian—a municipal corporation—was clearly operating under the color of law while engaging in proprietary conduct.

As recognized by the Supreme Court, municipalities are subject to direct liability under 42 U.S.C. § 1983 as public entities. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690, 98 S. Ct. 2018, 2035, 56 L. Ed. 2d 611 (1978). Defendant Nathan's directives and adverse actions against Mrs. Lightner constitute conduct under the color of law, thereby satisfying all elements required to assert a Section 1983 claim. Moreover, while respondeat superior is not the proper standard for liability under § 1983, a "municipality can be found liable under 42 U.S.C.S. § 1983 . . . where the municipality itself causes the constitutional violation at issue." City of Canton v. Harris, 489 U.S.

4

378, 380. Here, Defendant Inlivian delegated the responsibilities and management of the Homeownership Program to Defendant Nathan and Defendant C.O.R.E. Due to Defendant Inlivian's failure to train and supervise Defendant Nathan and Defendant C.O.R.E, Mrs. Lightner and program participants suffered harm. (Amnd Compl ¶91)  Moreover, when Mrs. Lightner reported Defendant Nathans actions to Defendant Inlivian, they failed to investigate the harm done to housing recipients and disruption to Mrs. Lightner's job duties. (Amnd Compl ¶91) This inaction demonstrated deliberate indifference, as Inlivian knew of and disregarded an excessive risk to the plaintiff's constitutional rights, which were clearly established at the time of the incident in question. Thus, Defendants do not have qualified immunity.

The First Amendment right of free speech includes not only the affirmative right to speak, but also the right to be free from retaliation by a public official for the exercise of that right. A plaintiff seeking to recover for First Amendment retaliation must allege that (1) [s ]he engaged in protected First Amendment activity, (2) the defendants took some action that adversely affected [her] First Amendment rights, and (3) there was a causal relationship between [her] protected activity and the defendants' conduct. Jensen v. W. Carolina Univ., 2012 U.S. Dist. LEXIS 182662, *52-53. For purposes of a First Amendment retaliation claim under § 1983, a plaintiff suffers adverse action if the defendant's allegedly retaliatory conduct would likely deter "a person of ordinary firmness" from the exercise of First Amendment rights. Strong v. Charleston Cnty. Sch. Dist., 2024 U.S. Dist. LEXIS 37183, *10.

Mrs. Lightner sufficiently alleged that she provided Defendant Nathan with direct notice that she believed that Nathan was discriminating against housing residents based on their race, age, and credit status in violation of program, HUD, and FHA regulations. (Amnd Compl ¶47) Additionally, Mrs. Lightner sufficiently alleged that after she exercised her right to report her

5

allegations to human resources, who assured her that they too would notify Defendant Nathan of her concerns, that she began to experience adverse treatment on the job. (Amnd Compl ¶49-51) Contrary to Defendants' assertion, an employer writing you up for baseless accusations, refusing to supervise or speak to you, preventing an employee from performing work tasks, threatening an employee with further formal disciplinary action, and interfering with an employee's constitutional rights, would likely deter an ordinary person from speaking on the matters that caused the retaliation. (Amnd Compl ¶¶ 51,54,55,56,61) Likewise, as previously argued, "an employee is not required to demonstrate significant harm to establish adverse action. Muldrow at 346.

But for Mrs. Lightner, refusing to assist Defendant Nathan in her discriminatory efforts to change the population of the people served by Inlivian, Mrs. Lightner would not have been retaliated against, as her performance reviews prior to complaining exceeded the expectations of Defendant Nathan and her employer. (Amnd Compl ¶48)

II. **PLAINTIFF HAS STATED A CLAIM FOR DENIAL OF EQUAL PROTECTION OF THE LAWS UNDER THE FOURTEENTH AMENDMENT.**

Contrary to Defendants assertions, Plaintiff has not alleged a claim for pure retaliation. Employees whose job functions did not include getting resident applicants' mortgage ready and keeping Inlivian in compliance with HUD and FHA, did not experience the hostile work environment that Mrs. Lightner did, thus their jobs were not constructively terminated. (Amd Compl ¶ 88) 42 U.S.C.S § 1983 creates an express right of action against state actors for the deprivation of any rights that are secured by the Constitution and federal laws, including § 1981. 42 U.S.C.S. § 1983. Chambers v. N.C. DOJ, 66 F.4th 139, 140. Specifically, the Civil Rights Act of 1991 provides that all persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white

citizens[.]" 42 U.S.C. § 1981(a). Chambers v. N.C. DOJ, 66 F.4th 139, 141. Likewise, 42 U.S.C.S. § 3617 protects persons who aid or encourage others in securing rights to equal housing opportunities and conditions by making it unlawful to coerce, intimidate, threaten, or interfere with them because of their aid or encouragement. People Helpers Found. v. Richmond, 781 F. Supp. 1132, 1132. Thus, allegations of a hostile work environment can support a 42 U.S.C.S. § 1983 Equal Protection claim. Alexander v. City of Greensboro, 762 F. Supp. 2d 764, 774. To state a hostile work environment claim under section 1983 and the Fourteenth Amendment, an employee must plausibly allege that (1) he experienced unwelcome conduct, (2) the conduct was based on a protected characteristic under the Fourteenth Amendment, (3) the conduct was sufficiently severe or pervasive to alter the conditions of employment and create an abusive [*15] atmosphere, and (4) the conduct is imputable to the employer. Soto v. Town of Rolesville, 2024 U.S. Dist. LEXIS 64887, *14-15.

Plaintiffs are entitled to plead in the alternative, regardless of consistency. Fed. R. Civ. P. 8(d)(3). Id. To establish municipal liability for a widespread, unconstitutional custom or practice among the City…, Plaintiffs must show (1) that the City had "actual or constructive knowledge" of the custom and usage by its responsible policymakers, and (2) that there was a failure by those policymakers, "as a matter of specific intent or deliberate indifference," to correct or terminate the improper custom and usage." Id.

As a black woman Mrs. Lightner was more aware and sensitive to how Nathan's discriminatory conduct was affecting minority residents. (Amnd Compl ¶21) Defendants' discriminatory conduct against housing residents interfered with Mrs. Lightner's right to work and right to assist and encourage housing applicants in securing their rights to equal housing opportunities. Mrs. Lightner accepted the position of housing coordinator, with the understanding that she would be responsible

7

for assisting residents in getting mortgage ready; however, Defendants breached this agreement to facilitate their discrimination of housing residents which created a hostile work environment for Mrs. Lightner that altered the conditions of her employment and work tasks. Because the essential functions of Mrs. Lightner's job included keeping the homeownership program up to date and in compliance with the Fair Housing Act, Equal Credit Act, and other relevant laws, Defendants' discriminatory actions against residents interfered with Mrs. Lightner's right and obligation to perform the essential functions of her job. (Amnd Compl ¶ 87) Defendants at all relevant times were state actors and acting under the color of State Law. (Amnd Compl ¶ 90) As a result, Defendants violations Mrs. Lightner was subjected to a hostile work environment unlike her colleagues outside of her protected class. Defendant Inlivian and Defendant C.O.R.E. were aware of Defendant Nathan's actions, yet they stood by idle and refused to provide training and did not implement any corrective action to stop the discrimination. (Amnd Compl ¶¶ 91-92) Therefore, Mrs. Lightner was not afforded equal protection of the law in maintaining her contract to work for Inlivian to perform the functions of the Homeownership Coordinator position, thus Defendants' discriminatory conduct directly affected her position differently than others that were not hired to perform her work duties. (Amnd Compl ¶ 83)

III.    **PLAINTIFF HAS STATED A CLAIM FOR HOSTILE WORK ENVIRONMENT.**

Courts apply the same legal standard developed for hostile work environment claims under Title VII to claims for hostile work environment under § 1983. <u>Washington v. Univ. of Md.</u>, 2024 U.S. Dist. LEXIS 122537, *55. To state a hostile work environment claim, a plaintiff must demonstrate that: (1) she experienced unwelcome harassment; (2) the harassment was based on her protected status; (3) the harassment 'was sufficiently severe or pervasive to alter the conditions of employment and create an abusive work environment; and

8

(4) there is some basis for imposing liability on the employer. Id. Pursuant to 42 USCS § 2000e-3, employee's complaints about treatment of others is considered protected activity, even if employee is not a member of the class [s]he claims suffered from discrimination, and even if discrimination complained about was not legally cognizable. Ray v. Henderson, 217 F.3d 1234, 2000 Cal. Daily Op. Service 5520, 2000 D.A.R. 7393, 78 Empl. Prac. Dec. (CCH) ¶ 40196, 83 Fair Empl. Prac. Cas. (BNA) 753, 2000 U.S. App. LEXIS 15664 (9th Cir. 2000). Likewise, 42 U.S.C.S. § 3617 protects persons who aid or encourage others in securing rights to equal housing opportunities and conditions by making it unlawful to coerce, intimidate, threaten, or interfere with them because of their aid or encouragement. People Helpers Found. v. Richmond, 781 F. Supp. 1132, 1132.

Here, Mrs. Lightner's amended complaint provides that she experienced unwelcome harassment from Defendants when she was prevented from completing work tasks, written up for voicing her objections to Defendants' actions that amounted to illegal and discriminatory conduct, and Defendants' refusal to supervise and communicate with her. (Amnd Compl ¶¶ 70-72). While Mrs. Lightner was not a resident of the housing authority, she was afforded protection pursuant to Title VII, 42 U.S.C. § 3617, and N.C. Gen. Stat. §126-84-85 to exercise her free speech in warning her supervisor and management about policy and program violations that caused discrimination against resident applicants that were being denied equal access to fair housing opportunities.

In assessing whether the harassment perceived by Mrs. Lightner was sufficiently severe, this court must examine the totality of the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance. Strothers v. City of Laurel, 895 F.3d 317, 323. This element has both a subjective and objective component,

i.e., the employee must both personally and reasonably believe that conduct rises to the level of a hostile environment. Id. Here, Mrs. Lightner's amended complaint provides several examples of how Defendants' actions prevented her from performing the essential functions of her job and that her objections to doing things the way the law required her to subjected her to write ups, threats of termination, and exposure to legal liability. (Amnd Compl ¶ ¶ 100-105) Mrs. Lightner suffered mental anguish and stress from being told by two managers to do her job differently for more than one year. (Amnd Compl ¶ 113) Additionally, Mrs. Lightner believed that Defendants were asking her to violate HUD and FHA regulations and to discriminate against resident applicants that she was assisting, thus she believed that Defendants were asking her to commit illegal activity. (Amnd Compl ¶ 100) Therefore, by evaluating the totality of the circumstances a jury could infer that Mrs. Lightner's work environment was sufficiently severe or pervasive to alter the conditions of her employment.

As a result of Mrs. Lightner's exposure to the workplace, she was diagnosed with PTSD. **[DE 47.2]** Therefore, in evaluating the totality of the circumstances a jury could infer that the hostility in Mrs. Lightner's work environment was sufficiently severe or pervasive to alter the conditions of her employment.

IV.  **PLAINTIFF HAS STATED A CLAIM FOR CONSTRUCTIVE DISCHARGE.**

Moreover, a constructive discharge claim may be based on the same facts which give rise to an employee's hostile work environment claim. Harper v. Charleston Cnty. Sch. Dist., 2024 U.S. Dist. LEXIS 47179, *16-17. A plaintiff who advances such a compound claim must show working conditions so intolerable that a reasonable person would have felt compelled to resign." Id. Here, Mrs. Lightner clearly articulated that due to being prevented from performing the essential functions of her job and believing that Defendants' actions were causing her to violate State and

10

Federal Law, Mrs. Lightner had no choice but to resign, thus her amended claim is not futile as a jury could infer based on the circumstances that resignation was the only option to avoid termination and violating the law.

V.   **PLAINTIFF HAS STATED A CLAIM FOR NEGLIGENT SUPERVISION AND RETENTION.**

Furthermore, a tort is any civil wrong or injury, or a wrongful act. Milton v. IIT Research Inst., 138 F.3d 519, 522. This Court has found that claims for intentional and negligent infliction of emotional distress… do satisfy the "tortious act" element at this stage in the proceedings. Testa v. Elec. Data Sys. Corp., 2007 U.S. Dist. LEXIS 37428, *13. Further, even if those claims [do] not survive, it has been assumed that Title VII violations can serve as the "tortious act" element of a state law negligent supervision/retention claim. Id. Likewise, The definition of tortious act or omission encompasses constitutional torts. M.A.B. v. Bd. of Educ., 286 F. Supp. 3d 704, 708. 42 U.S.C.S. § 1983 creates a statutory remedy for intentional violations of one's constitutional rights. Tucker v. Winston, 532 F.2d 752, 752.

Contrary to the Defendants' assertion, Mrs. Lightner has alleged tortious acts sufficient to establish a claim for negligent supervision and retention. Mrs. Lightner properly alleged that Defendants violated her civil right to complain and report violations of State and Federal Law and her right to report substantial and specific danger to the public, pursuant to N.C. Gen. Stat. §126-84-85 and 42 U.S.C. § 3617. (Amnd Compl ¶¶ 86-87). Additionally, Mrs. Lightner sufficiently alleged that as a result of Defendants' tortious acts to prevent her from reporting and correcting the unlawful conduct of Defendants that she felt intimated, fearful, and was diagnosed with anxiety, and suffered several panic attacks and severe emotional distress. (Amnd Compl ¶¶ 59,100-101,125) While Defendants argued that Mrs. Lightner caused her own injuries, such

11

assertion is baseless. Mrs. Lightner sufficiently pleaded that she was harmed by the negligent conduct of Defendants. (Amnd Compl ¶ 122) Mrs. Ligher established in her amended complaint that Defendants were aware that Mrs. Lightner was suffering from emotional distress and felt that Defendants' actions were creating a hostile work environment. (Amnd Compl ¶¶ 49-60, 122-125) Despite this knowledge, Defendants stood by idle and refused to investigate her claims or take action. (Amnd Compl ¶¶ 124-125) While Mrs. Lightner went to management to seek resolution, she never received assistance, and the adverse treatment she suffered increased every time she reported her observations to management. While other employees were aware of the activity they also stood by idle in fear of retaliation and allowed Mrs. Lightner to take on the stress of doing the right thing by reporting the activity. But for Mrs. Lightner resigning, she would have been terminated or subjected to civil or criminal liability. As a result of Defendants' failure to correct the actions of Defendant Nathan and to provide training, Mrs. Lighter was exposed to a hostile work environment that constructively terminated her position. (Amnd Compl ¶¶ 98-109) Additionally, Defendants failure to supervise caused harm to the public and violated their due process right to receive federal funding to assist them with purchasing home. (Amnd Compl ¶¶ 24, 46).

VI. **NATHAN IS NOT ENTITLED TO IMMUNITY**

Public official immunity precludes suit against public officials in their individual capacities and protects them from liability as long as a public officer lawfully exercises the judgment and discretion with which [s]he is invested by virtue of h[er] office, keeps within the scope of h[er] official authority, and acts without malice or corruption. Robey v. Charlotte-Mecklenburg Bd. of Educ., 2024 U.S. Dist. LEXIS 186785, *27. Public official immunity applies only to public officials, but not to all public employees. Robey v. Charlotte-Mecklenburg Bd. of Educ., 2024

12

U.S. Dist. LEXIS 186785, *30. There are certain distinctions between a public official and public employee:

(1) a public office is a position created by the constitution or statutes; (2) a public official exercises a portion of the sovereign power; and (3) a public official exercises discretion, while public employees perform ministerial duties. Additionally, an officer is generally required to take an oath of office while an agent or employee is not required to do so.

Id.

Here, Defendant Nathan was not a public official. Defendant Nathan was the Vice President of C.O.R.E. Inc., which is a 501(c) non-profit subsidiary of Inlivian. The function of C.O.R.E. was proprietary in nature as the organization did not manage resident vouchers, rather only provided financial literacy and homeownership education and counseling to Inlivian residents. Even if this Court determines that C.O.R.E. is not proprietary, Defendant Nathan is precluded from asserting public official immunity as Plaintiff plead sufficient facts to pierce her immunity as Nathan acted outside the scope of her duties and with malice. (Amd Compl ¶ 28-32,40- 47); Better Gov't Bureau v. McGraw (In re Allen), 106 F.3d 582, 593, 36 Fed. R. Serv. 3d (Callaghan) 1196, 24 (4th Cir. 1997), 1997 U.S. App. LEXIS 1915.

VII. **CLAIMS ARE NOT DUPLICATIVE**

As previously stated above, Defendant Nathan was an agent for C.O.R.E., Inc., which is a subsidiary for Inlivian, therefore claims against Defendant Nathan in her official capacity as an agent for C.O.R.E. are not duplicative as to the claim against Defendant Inlivian. Moreover, Defendant Nathan acted outside the scope of her duties, thus she is subjected to claims in her individual capacity and claims for punitive damages.

## CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests the Court deny Defendants' Motion to dismiss, because Plaintiff has plead sufficient facts to state a claim upon which relief can be granted and genuine issues of material fact.

Respectfully submitted this the 9th day of December 2024.

**RICHBERG LAW, PLLC**

/s/ Shayla C. Richberg
Shayla C. Richberg, NC Bar No. 44743
Attorney for the Plaintiff
3326 Durham-Chapel Hill Blvd B- 120A
Durham, NC 27707
Phone: 919.403.2444
Fax: 919.869.1440
Email: DefendMe@RichbergLaw.com

## CERTIFICATE OF COMPLIANCE

This memorandum complies with the page limit provided in L.R. 7.1 (d) and does not exceed 25 pages and contains 14 pages.

## CERTIFICATE OF SERVICE

      I hereby certify that a copy of the foregoing **document** was electronically filed with the Clerk of Court using CM/ECF, which will send notification of such filing to the following:

Jeremy Stephenson, NC Bar No. 34623
Margaret Taviano, NC Bar No. 61506
LEWIS BRISBOIS BISGAARD & SMITH
521 East Morehead Street, Suite 250
Charlotte, North Carolina 28202
Phone: (704) 557-9929
Fax: (704) 557-9932
Jeremy.Stephenson@LewisBrisbois.com
Margaret.Taviano@LewisBrisbois.com
Attorneys for Defendants

This the 9th day of December 2024.

                                              /s/ Shayla C. Richberg
                                              Richberg Law
                                              3326 Durham-Chapel Hill Blvd. B-120A
                                              Durham, NC 27707
                                              Phone: (919) 403.2444
                                              Fax: (919) 869.1440
                                              DefendMe@RichbergLaw.com
                                              State Bar No. 44743
                                              Attorney for Plaintiff