UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:23-cv-846-MOC-SCR

| TONYA LIGHTNER, | ) | |
| --- | --- | --- |
| | ) | |
| Plaintiff, | ) | |
| | ) | **ORDER** |
| | ) | |
| vs. | ) | |
| | ) | |
| INLIVIAN, et al., | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

**THIS MATTER** is before the Court on a Motion to Dismiss Plaintiff Tony Lightner's ("Plaintiff") Amended Complaint filed by Defendants Inlivian, formally known as Charlotte Housing Authority ("Inlivian"), C.O.R.E. Programs, Inc. ("CORE"), and Monica Nathan ("Nathan") (collectively "Defendants"). (Doc. No. 52).

I. BACKGROUND

A. Plaintiff's Allegations

This action arises from the termination of Plaintiff's employment with Defendant Inlivian. The Court presumes the facts alleged in Plaintiff's Amended Complaint are true for the purposes of assessing this Motion.

Plaintiff was a Coordinator for Defendant's Home Ownership Program, where she processed applications for assistance. (Doc. No. 49 ¶¶ 22–23). That program, which is federally funded but administered by the State of North Carolina, assists residents who are historically ineligible to receive home loans due to low credit scores or other financial challenges. (Id. ¶ 24). Plaintiff was promoted to the role of Homeownership Program Coordinator in 2019, where her

1

supervisor was Defendant Nathan. (Id. ¶¶ 25–26). Plaintiff was instructed to conduct her work in violation of Department of Housing and Urban Development ("HUD") regulations, including by not reviewing applications from "elderly" applicants and from those with low credit scores. (Id. ¶¶ 28–42). When she did not follow those instructions, she was "threatened and harassed," and told applications processed against Defendant Nathan's instructions would be deleted. (Id. ¶ 43). When Plaintiff complained, Defendant Nathan began to not show up for monthly meetings with Plaintiff, "refused to assist [Plaintiff] in her job duties, and prevented [Plaintiff] from completing certain work tasks." (Id. ¶ 51). After Plaintiff complained to Human Resources, she was given an informal warning, and no investigation was conducted. (Id. ¶¶ 54–57). Plaintiff felt that she could not perform her job duties without violating the law and resigned from her position. (Id. ¶¶ 60–61).

B. Procedural Background

On December 8, 2023, Plaintiff filed a Complaint in this Court against Inlivian and Nathan in her personal and official capacities. (Doc. No. 1). Defendants filed a Motion to Dismiss in October 2024. (Doc. No. 45). On November 20, 2024, a U.S. magistrate judge granted Plaintiff's motion to amend the complaint. Defendants objected to that order. (Doc. No. 50). On November 21, 2024, Plaintiff filed the Amended Complaint, adding Defendant CORE. (Doc. No. 49). In her Amended Complaint, Plaintiff alleges the following against Defendants: (1) retaliatory discrimination in violation of 42 U.S.C. § 1983 ("§ 1983"); (2) deprivation of Equal Protection rights guaranteed by the Fourteenth Amendment in violation of Section 1983; (3) constructive discharge in violation of Section 1983; (4) hostile work environment in violation of Section 1983; and (5) negligent supervision and retention (against Inlivian and CORE only).

On December 2, 2024, Defendants filed the pending motion to dismiss under FED. R.

Civ. P. 12(b)(6). (Doc. No. 52). Plaintiff filed a response, and Defendants filed a reply. (Doc. Nos. 55, 60). This matter is now ripe for disposition.

## II. STANDARD OF REVIEW

Defendants have moved to dismiss under Fed. R. Civ. P. 12(b)(6). Under Fed. R. Civ. P. 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." A Rule 12(b)(6) motion tests the sufficiency of the complaint by asking whether the Plaintiff "has stated a cognizable claim." Holloway v. Pagan River Dockside Seafood, Inc., 669 F.3d 448, 452 (4th Cir. 2012). In reviewing a 12(b)(6) motion, the Court must accept as true all factual allegations in Plaintiff's complaint and draw all reasonable inferences therefrom in the light most favorable to Plaintiff. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–56 (2007). That said, to survive Defendants' 12(b)(6) motion, Plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level," such that the complaint contains "enough facts to state a claim to relief that is plausible on its face." Id. at 570. Consequently, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are insufficient to survive a 12(b)(6) motion. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 555). Instead, a complaint survives only if it "states a plausible claim for relief" that "permit[s] the court to infer more than the mere possibility of misconduct" based upon "its judicial experience and common sense." Id. at 679 (citations omitted).

## III. DISCUSSION

### A. Whether Plaintiff's 1983 Claims Against Inlivian, CORE, and Nathan in Her Official Capacity Are Permitted Under Monell

Under Monell, a local government cannot be held liable under Section 1983 on

a respondeat superior theory. Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 691 (1978). To establish municipal liability, "a section 1983 plaintiff must plead (1) the existence of an official policy or custom; (2) that the policy or custom is fairly attributable to the municipality; and (3) that the policy or custom proximately caused the deprivation of a constitutional right. Pettiford v. City of Greensboro, 556 F. Supp. 2d 512, 530 (M.D.N.C. 2008) (citing Jordan ex rel. Jordan v. Jackson, 15 F.3d 333, 338 (4th Cir. 1994)). While "official policy can be inferred from a municipality's omissions as well as from its acts . . . such omissions are actionable only if they constitute 'tacit authorization' of or 'deliberate indifference' to constitutional injuries." Wellington v. Daniels, 717 F.2d 932, 935–36 (4th Cir. 1983). A policy or custom that gives rise to Section 1983 liability will not "be inferred merely from municipal inaction in the face of isolated constitutional deprivations by municipal employees." Milligan v. City of Newport News, 743 F.2d 227, 230 (4th Cir. 1984); see also Wellington, 717 F.2d at 936 ("A single act or isolated incidents are normally insufficient to establish supervisory inaction upon which to predicate § 1983 liability.").

Section 1983 municipal liability attaches "only where the municipality itself causes the constitutional violation at issue." City of Canton v. Harris, 489 U.S. 378, 385 (1989). That is, beyond identifying a policy or custom that may be attributable to the governmental unit, a Section 1983 plaintiff "must also demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged." See Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown, 520 U.S. 397, 404 (1997). A plaintiff "must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." Id. "Where a plaintiff claims that the municipality has not directly inflicted an injury, but nonetheless has

4

caused an employee to do so, rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee." Id. at 405.

The Court finds that Plaintiff has not sufficiently alleged facts to state a claim against the municipal Defendants. Simply put, the allegations in the Amended Complaint do not demonstrate the existence of an official policy or custom that is fairly attributable to the municipality. Beyond conclusory statements that the alleged discrimination was part of a wider custom or policy, (Doc. No. 49 ¶¶ 84, 92), Plaintiff offers no factual details as to the existence of such a policy. See White v. City of Greensboro, 408 F. Supp. 3d 677, 691–92 (M.D.N.C. 2019) (dismissing claim where the plaintiff did not "sufficiently plead facts indicating the existence of a persistent and widespread practice" by the sheriff's office, and the plaintiff's "incantation of the legal standard for a Monell claim is insufficient, as a mere conclusion of law").

Plaintiff appears to argue that the Court should find municipal liability under a deliberate indifference theory based on Defendant Inlivian's failure to train and supervise Defendants Nathan and CORE properly, and by its failure to investigate potential violations after Plaintiff's report of misconduct. (Doc. No. 55 at 4–5). However, a claim for failure to supervise requires a "history of widespread abuse" and "isolated incidents are normally insufficient" for Section 1983 liability. Wellington, 717 F.2d at 936. There are no allegations of a history of abuse extending beyond this incident.

Similarly, far more factual detail would be required to state a claim that policymakers of the municipality ratified the conduct at issue. Ratification can support a municipal liability claim when the municipality is "actually responsible" for the actions of subordinates. See Starbuck v. Williamsburg James City Cnty. Sch. Bd., 28 F.4th 529 (4th Cir. 2022) (holding the plaintiff stated a claim for municipal liability based on a theory of ratification where he alleged the

5

policymakers conducted a review of his appeal of an adverse disciplinary action and voted to uphold the disciplinary action.); see also Uzzell v. Johnson, No. 5:20-CV-167-FL, 2021 WL 4267711, at **42–43 (E.D.N.C. Sept. 20, 2021) (allowing a Section 1983 equal protection claim to proceed where the plaintiffs alleged the defendant Town's policymakers had actual knowledge of, and participated in, persistent and widespread racially charged harassment, including use of a racial slur by a Town councilmember, and took no action to address it). Here, the Amended Complaint does not allege that policymakers reviewed and upheld, or otherwise ratified, the alleged conduct.

Because Plaintiff has failed to allege a custom or policy sufficient for Monell liability, the Section 1983 claims against Defendants Inlivian, CORE, and Nathan in her official capacity will be dismissed.

### B. Whether Nathan is Shielded from Liability in Her Individual Capacity by Public Official Immunity

"In North Carolina, official immunity protects public officials performing discretionary acts under color of authority from suit in their individual capacity." Evans v. Chalmers, 703 F.3d 636, 656–57 (4th Cir. 2012). "A public official may not be held individually liable for mere negligence, but may only be liable where her conduct is malicious, corrupt, or outside the scope of her authority." Dalenko v. Wake Cty. Dep't of Human Servs., 157 N.C. App. 49, 56 (2003). Defendants argue that claims against Defendant Nathan in her individual capacity should be dismissed because she is entitled to public official immunity, and there are not facts in the complaint that demonstrate that Defendant Nathan's actions were malicious, corrupt, or outside the scope of her authority, or that she acted with reckless indifference to Plaintiff's rights. (Doc. No. 52 at 18). The Court disagrees and will not dismiss the claims against Defendant Nathan in

her individual capacity based on public official immunity at this stage. Viewing the facts in the light most favorable to Plaintiff, the Court will let the claims against Nathan proceed in her individual capacity.

**C. Whether Plaintiff Stated a Section 1983 Claim for Retaliatory Discrimination Against Nathan in Her Individual Capacity**

"To state a claim under 42 U.S.C. § 1983, a plaintiff must allege both that: (1) a right secured by the Constitution or laws of the United States was violated, and (2) the right was violated by a person acting under the color of state law, or a 'state actor.'" West v. Atkins, 487 U.S. 42, 48–49 (1988)). "[O]ne cannot go into court and claim a 'violation of § 1983'—for § 1983 by itself does not protect anyone against anything." Gonzaga Univ. v. Doe, 536 U.S. 273, 285 (2002) (quoting Chapman v. Houston Welfare Rights Org., 441 U.S. 600, 617 (1979)). A section 1983 case may be brought pursuant to an alleged violation of an individual's constitutional or federal statutory rights. Maine v. Thiboutot, 448 U.S. 1, 5 (1980). To bring a Section 1983 claim, "a plaintiff must assert the violation of a federal right, not merely a violation of federal law." Blessing v. Freestone, 520 U.S. 329, 340 (1997).

To determine whether a statutory provision gives rise to a federal right, the Supreme Court has outlined a three-part test: First, Congress must have intended that the provision in question benefit the plaintiff. Id. Second, the plaintiff must demonstrate that the right assertedly protected by the statute is not so "vague and amorphous" that its enforcement would strain judicial competence. Id. at 340–41. Third, the statute must unambiguously impose a binding obligation on the States. Id. at 341. In other words, the provision giving rise to the asserted right must be couched in mandatory rather than precatory terms. Id. If that test is met, meaning Plaintiff demonstrates the federal statute creates an individual right, "there is only a rebuttable

7

presumption that the right is enforceable under § 1983" and dismissal is proper if the statute creates "a comprehensive enforcement scheme that is incompatible with individual enforcement under § 1983." Id. at 341 (citations omitted).

In her claim of retaliatory discrimination, Plaintiff appears to assert violations of her rights under the Fair Housing Act ("FHA") and the First Amendment as a basis for Section 1983 protection.[1] With respect to the FHA, numerous courts have held that the FHA's comprehensive remedial scheme precludes Section 1983 claims. See, e.g., Sinisgallo v. Town of Islip Hous. Auth., 865 F. Supp. 2d 307, 334 (E.D.N.Y. 2012) (holding that a plaintiff cannot assert claims under section 1983 for a deprivation of rights pursuant to the FHA because that statute contains a comprehensive remedial scheme) (collecting cases); see also South Middlesex Opportunity Council, Inc. v. Town of Framingham, No. 07-12018-DPW, 2008 WL 4595369, at **15–16 (D. Mass. Sept. 30, 2008) (finding that Section 3613 of the FHA is an enforcement mechanism for rights of individuals under Sections 3604 and 3617, and thus "forecloses complementary relief through § 1983"). The Court agrees that the FHA's inclusion of a private enforcement mechanism forecloses Section 1983 claims.

Plaintiff also argues that she was retaliated against for exercising her First Amendment rights. To state a retaliation claim under Section 1983 based on a First Amendment violation, a plaintiff "must allege that (1) she engaged in protected First Amendment activity, (2) the defendant took some action that adversely affected her constitutional rights, and (3) there was a causal relationship between his protected activity and the defendant's conduct." Martin v. Duffy,

---

[1] Plaintiff states in her response that "the basis for her Section 1983 claim is the violation of [Plaintiff]'s constitutional right to free speech under the First Amendment." (Doc. No. 55 at 3). It is unclear whether this means she is not asserting a federal statutory right under the FHA. Either way, the Court will address both potential bases for a retaliation claim.

8

858 F.3d 239, 249 (4th Cir. 2017) (quoting Constantine v. Rectors & Visitors of George Mason Univ., 411 F.3d 474, 499 (4th Cir. 2005)). Public employees are "entitled to be protected from firings, demotions and other adverse employment consequences resulting from the exercise of their free speech rights, as well as other First Amendment rights." Alderman v. Pocahontas Cnty. Bd. of Educ., 675 S.E.2d 907, 916 (W. Va. 2009) (citing Pickering v. Bd. of Educ., 391 U.S. 563 (1968)). For purposes of a First Amendment retaliation claim under Section 1983, a plaintiff suffers adverse action if the defendant's allegedly retaliatory conduct would likely deter "a person of ordinary firmness" from the exercise of First Amendment rights. Constantine, 411 F.3d at 500. Plaintiff claims after she exercised her right to report violations of HUD and FHA regulations, she experienced adverse treatment, including her supervisor refusing to assist her or attend meetings, being issued an informal warning outlining deficiencies in her work, and being threatened with further disciplinary action. (Doc. No. 49 ¶¶ 49–55).

Defendants, on the other hand, argue that Plaintiff failed to establish a causal connection between the protected activity and the alleged retaliation. They point to precedent requiring temporal proximity to establish a causal connection. See Constantine, 411 F.3d at 501 (stating that there must be a degree of temporal proximity to suggest causation, and that a lengthy time lapse between an official learning of the protected activity and the alleged adverse action negates an inference of causation); Pascual v. Lowe's Home Ctrs., Inc., 193 F. App'x 229, 233 (4th Cir. 2006) (holding that a three to four month time lapse is too long to establish a causal connection solely via temporal proximity). Defendants argue that Plaintiff did not describe the protected actions or the timeline enough to infer causation.

The Court finds that Plaintiff has alleged facts that state a claim for retaliation from the exercise of her First Amendment rights. First, with respect to the retaliatory action, a reasonable

9

finder of fact could determine that Defendants' alleged conduct would likely deter "a person of ordinary firmness" from the exercise of their First Amendment Rights. For example, a reasonable person may decide not to speak out about their company violating regulations if doing so resulted in their supervisor refusing to assist them or attend meetings with them, and to obstruct their work, as is alleged here. (Doc. No. 49 ¶ 51). Second, the Court finds that, despite Defendants' contentions, causation could be inferred from the temporal proximity alleged. Plaintiff alleges that she complained to human resources <u>after</u> December 2020, and that some of her supervisor's allegedly retaliatory actions occurred before she again complained in February 2021. While the timeline of events in the Amended Complaint is not crystal clear, the temporal proximity could lead to an inference of causation. Thus, the Court finds that Plaintiff has stated a claim for retaliatory discrimination under Section 1983 against Defendant Nathan in her individual capacity.

### D. Whether Plaintiff Stated an Equal Protection Claim under Section 1983

Plaintiff also complains that she was denied equal protection because other employees that did not complain of discrimination did not experience the same adverse treatment. (Doc. No. 49 ¶ 88).[2] This allegation does not amount to a claim of discrimination; rather, it is a a rewording of Plaintiff's First Amendment claim. See <u>Wilcox</u>, 970 F.3d at 460 (finding that retaliation for reporting alleged sex discrimination imposes negative consequences on an employee because of the employee's report, not because of the employee's sex). Moreover, there is no equal protection right to be free from retaliation—thus, a pure or generic retaliation claim does not

---

[2] In her Response, Plaintiff appears to attempt to alter (or, at least, expand) her claim, explaining that employees with different job functions did not experience the same hostile work environment she did. (Doc. No. 55, p. 6). The Court must consider the allegations in the Amended Complaint, and any claims in the briefings that differ from those allegations are irrelevant.

implicate the equal protection clause. Wilcox v. Lyons, 970 F.3d 452, 458 (4th Cir. 2020). In sum, Plaintiff has failed to state a claim under the Equal Protection Clause, and Count Two will be dismissed.

### E. Whether Plaintiff Stated a Hostile Work Environment Claim Under Section 1983

To state a hostile work environment claim under Section 1983 and the Fourteenth Amendment, an employee must plausibly allege that (1) [s]he experienced unwelcome conduct, (2) the conduct was based on a protected characteristic under the Fourteenth Amendment, (3) the conduct was sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere, and (4) the conduct is imputable to the employer. Laurent-Workman v. Wormuth, 54 F.4th 201, 210–12 (4th Cir. 2022). An employee also must plausibly allege that their protected characteristic was the "but for" cause of the alleged harassment. Id.

To determine whether conduct was sufficiently severe or pervasive to alter the employee's terms and conditions of employment and create an abusive working environment based on a protected characteristic, the court examines the allegations both subjectively and objectively. See, e.g., Harris v. Forklift Sys., Inc., 510 U.S. 17, 21–22 (1993). First, the employee must subjectively consider the conduct to be sufficiently severe or pervasive as to alter the conditions of employment. Clark Cnty. Sch. Dist. v. Breeden, 532 U.S. 268, 270–71 (2001) (per curiam). Second, a court views the conduct from the perspective of a reasonable person in the employee's position to determine whether it is objectively severe or pervasive. Id. at 271. The court considers all the circumstances, including the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Forklift Sys., Inc.,

11

510 U.S. at 23. Simple teasing, sporadic rude language, offhand comments, jokes related to a protected status, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment. Breeden, 532 U.S. at 271.

Defendants argue that Plaintiff's Amended Complaint does not allege sufficiently severe and pervasive conduct because her allegations fall under the category of "petty slights, minor annoyances, and simple lack of good manners," which do not amount to a hostile work environment claim. See Bonds v. Leavitt, 629 F.3d 369, 386 (4th Cir. 2011); (Doc. No. 60 at 5-6).

The Court finds that, when viewing the fact alleged in the light most favorable to the Plaintiff, Plaintiff has stated a claim for hostile work environment. According to the Amended Complaint, Defendants prevented Plaintiff from completing work tasks, wrote her up for refusing to discriminate against applicants, refused to assist her with work tasks, and refused to supervise her. (Doc. No. 49 ¶¶ 70–71). Plaintiff alleges that she was distressed trying to comply with the differing instructions of supervisors, and that she was being asked to conduct her job in a way she knew to be illegal. The totality of the circumstances test includes whether the conduct unreasonably interferes with an employee's work performance. A finder of fact could determine that receiving conflicting instructions and being asked to violate federal regulations unreasonably interfered with Plaintiff's work performance, and as a result, was sufficiently severe or pervasive to alter the conditions of her employment. Thus, Count Four will not be dismissed for failure to state a claim.

F. **Whether Plaintiff Stated a Claim for Constructive Discharge Under Section 1983**

To state a claim for constructive discharge claim under Section 1983 and the Fourteenth Amendment, Plaintiff must have alleged, in non-conclusory fashion, how her "working

12

Case 3:23-cv-00846-MOC-SCR     Document 86     Filed 02/21/25     Page 12 of 15

conditions [became] so intolerable that a reasonable person in the employee's position would have felt compelled to resign." Green v. Brennan, 578 U.S. 547, 555 (2016) (citation omitted). The standard for intolerable working conditions sufficient to create a constructive discharge is higher than that for a hostile work environment claim. Evans v. Int'l Paper Co., 936 F.3d 183, 193 (4th Cir. 2019). "[M]ere dissatisfaction with work assignments, a feeling of being unfairly criticized, or difficult or unpleasant working conditions" do not constitute objectively intolerable conditions. Heiko v. Colombo Sav. Bank, F.S.B., 434 F.3d 249, 262 (4th Cir. 2006) (citation omitted).

For the same reasons discussed above, Plaintiff's constructive discharge claim survives the motion to dismiss. A reasonable finder of fact could determine that being asked to violate the law and receiving conflicting instructions on how to perform their role would compel a reasonable person to resign from a position. Count Three will not be dismissed.

### G. Negligent Supervision and Retention

In North Carolina, a plaintiff must prove two elements to hold an employer liable for negligent supervision or retention: (1) that an incompetent employee committed a tortious act resulting in injury to the plaintiff; and (2) that prior to the act, the employer knew or had reason to know of the employee's incompetency. Smith v. First Union Nat'l Bank, 202 F.3d 234 (4th Cir. 2000).

The Court will not dismiss the Negligent Supervision and Retention claims at this stage. Taking Plaintiff's allegations as true, Plaintiff reported that Defendant Nathan was discriminating against applicants and violating regulations, and that Defendant Nathan was creating a hostile work environment for her. (Doc. No. 49 ¶¶ 56–58). According to the Amended Complaint, no action was taken to prevent Nathan's actions, and an executive at CORE stated

13

that they did not believe Plaintiff and would not investigate potential violations. (Id.). Subsequently, Defendant Nathan continued to create a hostile work environment for Plaintiff. (Id. ¶ 58). Viewing these facts in the light most favorable to Plaintiff, Defendant Nathan was incompetent in that she was violating Plaintiff's rights along with various regulations. Despite being made aware of this incompetence, satisfying the second prong of the above test, Defendants CORE and Inlivian took no action, and Defendant Nathan continued to violate Plaintiff's rights by creating an allegedly hostile work environment, causing injury. The allegations are sufficient to state a claim given the lenient standard of Iqbal and Twombly, and Count Five will not be dismissed.

### H. Punitive Damages

Finally, Defendants argues that Plaintiff's claims for punitive damages must be dismissed. To the extent that Plaintiff requests punitive damages against CORE, Inlivian, and Nathan in her official capacity, those claims will be dismissed. See Newport v. Fact Concerts, Inc., 453 U.S. 247, 271 (1981) ("[A] municipality is immune from punitive damages under 42 U.S.C. § 1983"). However, the claims for punitive damages against Defendant Nathan in her individual capacity will be allowed to proceed, because a reasonable finder of fact could determine that Defendant Nathan acted with reckless indifference to Plaintiff's rights based on the facts alleged.

### IV. CONCLUSION

For the above reasons, Count Two will be dismissed in its entirety. Counts One, Three and Four, and all claims for punitive damages, will be dismissed as to Defendants Inlivian, CORE, and Nathan in her official capacity, but not as to Defendant Nathan in her individual capacity. Count Five will not be dismissed.

## ORDER

**IT IS, THEREFORE, ORDERED,** that Defendants' Motion to Dismiss Plaintiff's Amended Complaint, (Doc. No. 52), is **GRANTED** in part and **DENIED** in part. Plaintiff's Section 1983 claims against Defendants Inlivian, CORE, and Nathan in her official capacity (Counts One through Four) are **DISMISSED** with prejudice along with any claims for punitive damages as to those Defendants. Plaintiff's equal protection claim is **DISMISSED** with prejudice in its entirety. The Motion to Dismiss is **DENIED** as to Counts One, Three, and Four against Defendant Nathan in her individual capacity, and Count Five. This action will go forward on the remaining claims.

Signed: February 21, 2025

Max O. Cogburn Jr
United States District Judge